### VAN BOSKERCK v. HAYWARD et al.

(Supreme Court, Special Term, New York County. June, 1913.)

1. MORTGAGES (§ 507*)—FORECLOSURE—REFERENCE.

   The referee for sale in mortgage foreclosure should control the proceedings, and counsel for plaintiff is not to choose the date for sale, place the advertising, and select the auctioneer.

   [Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 1506–1509; Dec. Dig. § 507.*]

2. MORTGAGES (§ 582*)—FORECLOSURE—COST OF REFERENCE.

   Where, on a motion to compel plaintiff in mortgage foreclosure proceedings to pay fees and disbursements of the referee for sale, the facts are in dispute as to whether the sale was controlled by the referee or by counsel for plaintiff, a reference to ascertain the facts will be ordered.

   [Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 1661, 1663; Dec. Dig. § 582.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Proceedings by Lizzie Van Boskerck against William L. Hayward and others to foreclose a mortgage. On motion to compel plaintiff to pay fees and disbursements of the referee. Motion ordered to stand over pending a reference to ascertain the facts.

See, also, 154 App. Div. 894, 141 N. Y. Supp. 1149.

Francis X. McDonough, of New York City, for the motion.

Butts & Vining, of New York City (James J. Thornley, of New York City, of counsel), opposed.

GIEGERICH, J. The referee appointed to sell in an action to foreclose a mortgage moves for an order directing the plaintiff to pay the referee's fees and disbursements. The referee was appointed to sell the property embraced in this action by a judgment entered on August 2, 1912. On August 6, 1912, publication of the notice of sale to be made on August 29th was begun. The notice of sale was sent to the papers through an advertising agency by one of the counsel for the plaintiff, but not the counsel who argues this motion. On August 10th the referee sent a letter to the Law Journal, stating that he had never seen the original of the notice of sale which was being published in that paper, or had anything to do with it or with the selection of the date, etc., and that he repudiated it.

The counsel for the plaintiff who furnished the notice of sale to the advertising agency asserts that prior to preparing and furnishing such notice he was called on the telephone by some one representing himself to be the referee, who stated that he had seen a published list of referees, and that he was the referee named to sell in the case, and was arranging for an absence, and wanted information as to the probable date of sale, etc., and that the counsel answered him that the date could be named in a day or two, and that he, the counsel, would prepare and insert the notice of sale, and that the referee acquiesced in this arrangement. It is significant that the counsel does not say that he asked the referee what auctioneer should be selected, or what newspaper, or even what day of the week. The referee denies ever having had any such telephonic interview. Thereafter an agreement was made between the referee and the plaintiff's counsel that the notice as prepared and inserted by the counsel would be recognized and acted upon by the referee, and that the commissions for the advertising should be transferred on the books of the newspapers from the credit of the advertising agency the plaintiff's counsel had employed to the credit of another advertising agency which the referee wished to employ. A further difference had existed as to the auctioneer to be selected, but the referee apparently did not insist upon his own choice of an auctioneer. Subsequently a difference arose between the two advertising agencies over the transfer of the credit for the advertising, and the referee proceeded to advertise the sale anew, repudiating the advertisement that had been theretofore inserted.

[1] Before going further it seems necessary to make some general observations upon the duties of referees appointed to sell real estate, because from what appears in various places in the voluminous affidavits and in the briefs, and from what they concededly did in this

case, it would appear that neither the plaintiff's counsel nor the referee has the right view as to what a referee in a foreclosure action should do, and what the attorneys and counsel for the plaintiff should refrain from doing. There ought never to be any dispute between a referee and the plaintiff's attorney as to the selection of an auctioneer, because the plaintiff ought not to seek to influence, still less to control, the selection of an auctioneer. The power of an auctioneer at a sale is so great that he ought never to feel that his selection was due to any one of the parties in interest. If all the parties in interest should agree upon an auctioneer, then a referee would doubtless be guilty of an abuse of discretion if he insisted on choosing some one else. If any custom has grown up among attorneys and referees, whereby the referees permit the attorneys for plaintiffs in foreclosure actions to select the auctioneer and the papers in which the sale shall be advertised and the time for selling, it is a dangerous custom and should be discontinued.

Speaking broadly, the interest of the plaintiff in a foreclosure action is manifestly not the same as the interest of the owner of the equity of redemption and others interested in the action. This divergence or even antagonism of interest may appear in a great variety of ways. As one illustration, we may take the case where the plaintiff desires to obtain the property for himself, in which case it would be to his interest to have the advertising done inadequately, and the sale conducted inefficiently, or with partiality, or on a badly chosen day, in order that the property might be bought in at a bargain. The interest of the owner of the equity, on the contrary, is to get the highest price possible, in order that there may be a surplus, or in any event a smaller deficiency; the surplus belonging to him and the deficiency being something for which he is ordinarily liable. It may be that in the majority of foreclosure actions the owner of the equity is financially irresponsible, or is not on the bond, and consequently is indifferent to the amount of the deficiency judgment, and has no hope of any surplus, and has no interest whatever either in the proceedings leading up to the sale or in the sale itself. It may be, also, that it would result in no injustice or impropriety of conduct in the great majority of foreclosure sales if the selection of the referee, and of the papers for advertising, and of the time of the sale, and all such matters, and even the conduct of the sale itself, were left absolutely to the plaintiff or to the plaintiff's attorneys; but there are in the aggregate a great many cases, although they may be comparatively in a small minority, where such a privilege would be abused, and hence it is that the law provides that sales shall be conducted by a referee.

It was doubtless the wisdom born of experience that gave rise to the provision of rule 61 of the General Rules of Practice, which prohibits the court from appointing as referee to compute or to sell in foreclosure cases any person nominated by a party to the action or his counsel. The office of a referee to sell in such cases is not an empty one, nor are his duties perfunctory and formal; but he should, in fact as well as in theory, select the time of sale, avoiding undue delay, of course, and the auctioneer and the means of advertising,

within the limits permitted by law. Whatever discretion is to be exercised should be exercised by him, and not delegated by him to any one of the parties. If any different custom has grown up in this city, the sooner that custom is discontinued the more secure the rights of all parties will be, and the less danger there will be of unseemly controversies between referees and attorneys for plaintiffs. If all attorneys would refrain from seeking to control matters which it is manifestly improper that they should control, there ought to be an end of such differences as arose in this case and which scandalize the administration of justice. I do not mean by this that referees should not be open to suggestions from any and all parties as to all these matters affecting the sale, and parties having an interest ought to feel free to make such suggestions, but only for one purpose, and that is that as high a price as possible may be received; and in the end the action taken should be the action of the referee, and not the action of some one else previously acquiesced in by him, or subsequently attempted to be ratified by him.

In the present case, leaving aside all matters in dispute, both the plaintiff's counsel and the referee were clearly wrong in some things that they concededly did. The plaintiff's counsel ought not to have asked for, nor to have accepted, the duty of preparing and advertising the notice of sale without receiving instructions from the referee as to the name of the auctioneer to be inserted and the date and the newspaper to be used. The referee ought not to have insisted that any particular advertising agency receive the benefit of the advertising. The one thing that was wholly immaterial, that had no possible relation to the success of the sale, or to the performance of the referee's duty, was the one thing that the referee insisted upon, and the thing that finally caused the break. I might remark in passing that, so far as concerns the employment of advertising agencies, I can see no harm in such a practice so long as the cost of advertising is not increased. I recognize that there may be a distinct advantage in having an advertising agency that makes a business of such things attend to the necessary details, including the payment of the bills and procurement of the necessary affidavits of publication, all of which is done before the referee pays out any money.

[2] In this case, in fact, there seems to be no question of the wisdom and advantage of employing such an instrumentality. The controversy has arisen because the referee wished to employ one agency, while the plaintiff's attorneys wished to employ another. In the present case, although the referee, according to his own statement of the facts, was at one time inappreciative of his duties and obligations, and lowered the dignity of his office by a bargaining which ought never to have been attempted, nevertheless he did in the end do what was incumbent upon him from the start, namely, make his own selection of an auctioneer, newspaper, and date of sale, and proceed to advertise; and if the facts are as he states them he should prevail upon this motion, his fees to be measured by the rule laid down in Harrington v. Bayles, 40 Misc. Rep. 388, 82 N. Y. Supp. 379. I am unable, however, to satisfy myself from the affidavits what the facts are.

A reference will be ordered, therefore, to take testimony and report upon the facts in controversy, and especially as to whether or not the referee personally held the telephonic conversation with the plaintiff's counsel, or authorized such conversation, as the plaintiff's counsel claims, and also as to what took place between the plaintiff's counsel and the referee on October 25th, at which time the referee refrained from making the sale he had advertised, as he claims, upon the promise of the plaintiff's counsel that the referee's fees and expenses would be paid if the referee would withdraw the sale.

The motion to compel the plaintiff to pay the fees and disbursements of the referee must therefore stand over until the coming in of the referee's report.